UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DANIEL NAVON, on behalf of Plaintiff and a
class,

                      Plaintiff,

       - against -

SCHACHTER PORTNOY, L.L.C., and
CAVALRY PORTFOLIO SERVICES, LLC,

                     Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-63 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

On January 4, 2019, Plaintiff Daniel Navon filed this putative class action against two debt collectors,[1] Defendants Schachter Portnoy, L.L.C. and Cavalry Portfolio Services, LLC (collectively, "Defendants"), for violating the Fair Debt Collection Practices Act ("FDCPA") by mailing debt collection letters that allegedly (1) misrepresented information to create a "false record" that "could" later be used to extend the statute of limitations for debt collection litigation, and (2) failed to effectively state the amount of the alleged debt. Schachter has moved to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Schachter's motion is granted in its entirety.

---

[1] The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

**BACKGROUND**

Prior to filing this action, Plaintiff incurred an unspecified amount of personal credit card debt to Citibank, N.A.[2] (Amended Complaint ("Am. Compl."), Dkt. 18, ¶ 25–26.) On June 29, 2018, Citibank notified Plaintiff that it had sold his debt to Cavalry SPV I, LLC. (*Id.* ¶ 26; Citibank Notice, Dkt 18-1, at ECF[3] 2.) The notice from Citibank stated that the balance of the debt was $6,257.68. (Am. Compl., Dkt. 18, ¶ 26; Citibank Notice, Dkt 18-1, at ECF 2.) Also on June 29, 2018, Cavalry sent Plaintiff a debt collection letter informing him that it would service his account on behalf of Cavalry SPV. (Am. Compl., Dkt. 18, ¶ 27; Cavalry Letter, Dkt. 18-2, at ECF 2.) The Cavalry letter stated that the "debt due as of charge-off"[4] was $6,331.07, that the "total amount of debt" owed to Cavalry SPV was $6,257.68, and that "any difference" between the two amounts was "due to the application of credits to [the] account prior to the date of [the] letter. (Cavalry Letter, Dkt. 18-2, at ECF 2.) Subsequently, Schachter sent Plaintiff yet another debt collection letter on November 19, 2018, stating that Cavalry SPV had retained Schachter to collect the debt that Plaintiff owed to it. (Schachter November 19 Letter, Dkt. 18-3, at ECF 2.) Schachter's letter confirmed the amounts listed in the earlier letter from Cavalry and further stated that the "[t]otal amount of payments and/or credits made on the debt since charge-off" was $73.39. (*Id.*)

---

[2] The amended complaint does not indicate the principal amount of the debt or when it was incurred.

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] "A 'charge-off' is a declaration by a creditor that a debt is unlikely to be collected, typically, because the borrower is severely delinquent in his repayment of the debt." *Weinstock v. Chase Card Servs.*, No. 07-CV-3087 (ENV), 2009 WL 10706507, at *1 n.3 (E.D.N.Y. Oct. 5, 2009); *see also Swafford v. Unifund CCR Partners*, No. 13-CV-1572 (SDY), 2013 WL 5701045, at *1 (N.D. Ill. Oct. 18, 2013) (defining "charge off" as "the point that the credit card receivable was no longer carried on [the creditor's] books as an asset").

Plaintiff was confused by the reference to "payments and/or credits," and he did not understand what the $73.39 payment and/or credit amount was attributable to, so he called Schachter on December 12, 2018.[5] (Am. Compl., Dkt. 18, ¶ 42.) On this call, Plaintiff was told that "Cavalry had credited back interest that had been added post-charge-off."[6] (*Id.*) On December 28, 2018, Schachter sent a follow-up letter confirming the amounts previously stated in the November 19 letter. (Schachter December Letter, Dkt. 18-4.) This action followed. (*See* Complaint, Dkt. 1.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on January 4, 2019. (*See id.*) Cavalry filed an answer on February 28, 2019. (*See* First Cavalry Answer, Dkt. 17.) On the same day, Plaintiff filed an amended complaint, attaching as exhibits the various letters that he had received from Defendants. (*See* Am. Compl., Dkt. 18.) On March 14, 2019, Cavalry filed its answer to the amended complaint. (*See* Operative Cavalry Answer, Dkt. 21.) The Honorable Cheryl L. Pollak granted an extension of time for Schachter to answer the amended complaint (*see* March 14, 2019 Order), and on March 26, 2019, Schachter filed a letter motion for a pre-motion conference in anticipation of filing a motion to dismiss (*see* Schachter Br., Dkt. 26). The Court construed Schachter's letter as its motion to dismiss and set a briefing schedule. (*See* April 4, 2019 Order.) Schachter's motion was fully briefed on May 9, 2019. (*See* Schachter Reply, Dkt. 31.)

---

[5] The November 19 letter provided a telephone number for Cavalry. (November 19, 2018 Letter, Dkt. 18-3, at ECF 2.)

[6] "As a standard practice, most banks waive interest on credit card debts after charge off . . . ." *Danley v. Encore Capital Grp., Inc.*, No. 15-CV-11535 (GCS), 2015 WL 7733450, at *1 (E.D. Mich. Dec. 1, 2015).

3

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729–30 (2d Cir. 2013). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guar. Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

Plaintiff asserts that Schachter violated the FDCPA by "lumping together 'payments and/or credits' without explaining that this was not done with the involvement of Plaintiff, because it creates a false record with respect to events that might (a) restart the statute of limitations and (b) constitute[] an admission of debt." (Pl. Supp., Dkt. 30, at 2.) Plaintiff also argues that Schachter's November 19 letter failed to clearly and effectively state the amount of the debt owed. (*See id*.) Schachter responds that Plaintiff's "idiosyncratic and illogical interpretation" of its letters cannot support a valid claim under the FDCPA. (Schachter Supp., Dkt. 29, at 2.) The Court agrees with Schachter.

**I.    The FDCPA**

By enacting the FDCPA, Congress sought "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To that end, "[t]he FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (internal quotation marks omitted). Debt collectors are generally forbidden "from engaging in unfair, deceptive, or harassing behavior," *id.*, and are strictly liable for such behavior, "meaning that a consumer need not show intentional conduct by [a] debt collector to be entitled to damages," *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (internal quotation marks omitted). A debt collector may be held liable for even a single, isolated violation of the FDCPA. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010).

"[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (citation omitted). "[T]he least sophisticated consumer may lack 'the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer,' [but] he can nonetheless 'be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (internal citation omitted).

## II.     Claims Under 15 U.S.C. § 1692e

Plaintiff's claim that Schachter's letters were misleading is brought under 15 U.S.C. § 1692e, which provides, in relevant part, that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
> (2) The false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt[;]
> . . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

"Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 136 (2d Cir. 2017). "A representation is 'deceptive' under [§] 1692e if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Id.* at 135 (quoting *Easterling*, 692 F.3d at 233).

Even if a representation is deceptive within the meaning of § 1692e, it must be a material misrepresentation in order to give rise to liability. *Gabriele v. Am. Home Mortg. Servicing, Inc.*,

6

503 F. App'x 89, 94 (2d Cir. 2012) (summary order) (collecting citations recognizing that courts generally read a materiality requirement into the FDCPA's prohibition on false, deceptive, or misleading debt collection practices); *see also Lane v. Fein, Such & Crane LLP*, 767 F. Supp. 2d 382, 389–90 (E.D.N.Y. 2011) (finding that a misstatement was "not materially false or misleading" under the FDCPA). "The materiality inquiry focuses on whether the false statement would 'frustrate a consumer's ability to intelligently choose his or her response.'" *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 86 (2nd Cir. 2018). Accordingly, "'mere technical falsehoods that mislead no one' are immaterial" and do not give rise to liability under § 1692e. *Id.* (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).

    A.    **Section 1692e(2)**

"To state a claim under section 1692e(2)[,] a consumer must allege that the [representation] by the collector is incorrect." *Dick v. Enhanced Recovery Co., LLC*, No. 15-CV-2631 (RRM) (SMG), 2016 WL 5678556, at *7 (E.D.N.Y. Sept. 28, 2016). Plaintiff hinges his Section 1692e(2) claim on the notion that, by listing "payments and/or credits" together, Schachter created a "false record" that "might" later be used in debt collection litigation to extend the statute of limitations by "creat[ing] the impression on a judge . . . that the $73.39 is somehow attributable to Plaintiff." (Pl. Supp., Dkt. 30, at 3.) Plaintiff's § 1692 claim, then, is that Schachter's letters contained a "false representation of the . . . legal status" of Plaintiff's debt. *See* 15 U.S.C. § 1692e(2)(A). This claim is far-fetched and meritless.

New York law provides a six-year limitations period for actions to collect on a debt. *Espinal v. AFNI, Inc.*, No. 17-CV-3439 (KPF), 2018 WL 2733366, at *1 (S.D.N.Y. June 7, 2018) (citing N.Y. C.P.L.R. § 213). This limitations period may be extended pursuant to the "partial payment exception," which "has the effect of extending or renewing the statute of limitations period" when there is "a payment of a portion of an admitted debt, made and accepted as such,

7

accompanied by circumstances amounting to an absolute and unqualified acknowledgement by the debtor of more being due." *McNeary v. Charlebois*, 95 N.Y.S.3d 421, 424 (3d Dep't 2019) (internal quotation marks omitted). Based on this exception, Plaintiff contrives a theory that the allegedly false representation in a debt notice that partial payment was made (so as to extend the statute of limitations in a later debt collection litigation) violates § 1692e(2)'s requirement that a debt notice accurately represent the "legal status" of the debt.

Aside from the absence of any legal support for this theory, discussed *supra*, as a factual matter, Plaintiff has not alleged—indeed, cannot allege—that Schachter's letters falsely or inaccurately represented the legal status of Plaintiff's debt: As stated in the letters, the amount of the debt "due as of charge-off" was $6,331.07, but the "total amount of debt" owed by Plaintiff was less, $6,257.68, and that any difference was "due to the application of credits to [the] account prior to the date of [the] letter." (Cavalry Letter, Dkt. 18-2, at ECF 2.) Plaintiff, in fact, confirmed, by calling Schachter at the telephone number provided in the letters, that the credits referred to the removal of post-charge-off interest and not a partial payment by Plaintiff. Thus, there is no factual allegation in Plaintiff's complaint that supports Plaintiff's theory that Schachter's letters created a "false record" regarding the legal status of Plaintiff's debt.

Furthermore, even assuming *arguendo* that the Schachter letters erroneously represented, intentionally misrepresented, or misleadingly suggested that Plaintiff had made a partial payment on the debt that was credited against the charge-off amount, there is no legal support for Plaintiff's convoluted theory that this conduct constitutes a *material* violation of § 1692e(2). *See Cohen*, 897 F.3d at 85 (defining a material misstatement as one "capable of influencing the decision of the least sophisticated consumer" (internal quotation marks and alterations omitted)). The letters' reference to the "application of credits" to the debt amount could not be read by the "least

8

sophisticated consumer" as a claim that the limitations period was being, or could be, in effect, extended.[7] Plaintiff's inference or suspicion that Schachter's letters *might* be used deceptively in this manner in subsequent litigation simply does not qualify as a concrete, false representation as to the legal status of the debt owed by Plaintiff.[8] Only a consumer who searches for an ambiguity, and not the least sophisticated consumer relevant here, would interpret Schachter's letters as a claim that the statute of limitations to pursue collection on the debt had been extended.[9] *See Taylor*

---

[7] Although there is a line of cases holding that it is an FDCPA violation to threaten legal action on a time-barred debt, *see*, *e.g.*, *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 302–03 (E.D.N.Y. 2008); *see also Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 399 (6th Cir. 2015) (finding that a settlement offer with respect to a time-barred debt falsely implies that a debt is legally enforceable), these cases have no application here. There is a meaningful difference between attempting to collect on a time-barred debt without disclosing the fact that it is time-barred—*i.e.*, making an actual, material omission regarding the "legal status" of the debt to the consumer—and affirmatively creating a false record so as to enable otherwise time-barred debt litigation in the future. The former has to do with false or deceptive *notice* to the consumer, which is the target of the FDCPA's provisions, *see Cohen*, 897 F.3d at 85 ("The FDCPA was designed to give consumers reliable information so that they can make informed decisions about how to address debts . . . ."), whereas the latter has to do with simple fraud. The fundamental defect in Plaintiff's theory, as discussed more *supra*, is that it presumes a consumer who is a lawyer, and an extremely sophisticated one at that.

[8] In reality, Plaintiff's theory makes no sense. If, as Plaintiff posits, Schachter had wanted to falsely argue in a future debt collection action that Plaintiff had made partial payments, Schachter would not have disclosed this concocted information to Plaintiff in the debt notice. Rather, Schachter's letters simply would have advised Plaintiff of the total debt amount due, without any reference to credits. Then, Schachter would have produced whatever "records" it needed in connection with the debt collection action to fraudulently assert that Plaintiff had made partial payments that extended the statute of limitations. If anything, by referencing the credit in Plaintiff's debt notices, Schachter was not "deceiving" Plaintiff with regard to Schachter's alleged nefarious plot, but instead alerting Plaintiff to, and undermining, it.

[9] As previously noted in this district, many FDCPA cases appear to be lawyers' cases, alleging "defect[s] of which only a sophisticated lawyer, not the least sophisticated consumer, would conceive." *Ocampo, v. Client Servs., Inc.*, No. 18-CV-4326 (BMC), 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019). The inferential leap purportedly made by Plaintiff places this case among them and surely contributes to systemic costs that will be passed on to consumers in the form of higher interest rates and decreased access to credit. *See id.*

*v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 352 (S.D.N.Y. 2017), *aff'd*, 886 F.3d 212 (2d Cir. 2018).

Accordingly, Plaintiff's claim under § 1692e(2) is dismissed.

**B.     Section 1692e(10)**

Plaintiff's claim under Section 1692e(10) is similarly meritless.  As discussed *supra*, Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  While Plaintiff may be correct that the use of a "false record" in debt collection litigation to try to extend the statute of limitations would violate § 1692e(10), that scenario has nothing to do with the representations made to Plaintiff in the debt collection letters that Schachter sent.  *See Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 96–97 (2d Cir. 2015) (considering allegations that the defendants had filed false affidavits in court and distinguishing such false representations to a court from false representations to a debtor).  Here, it cannot plausibly be inferred that, by sending letters informing Plaintiff of credits applied to his debt amount, Schachter had engaged in a deceptive means of debt collection.  Rather, the allegations in the complaint establish that Schachter simply conveyed information about the amount due on the debt and the manner in which that amount was calculated.  Viewed most charitably, Plaintiff's § 1692e(10) claim is a premature and speculative attack on a deceptive debt collection practice that might arise in a future debt collection action, rather than a viable claim for relief based on a past means of debt collection that is false or deceptive on its face.

Accordingly, Plaintiff's claim for relief under § 1692e(10) is dismissed.

**III.    Claim Under Section 1692g**

Plaintiff also seeks relief under 15 U.S.C. § 1692g(a)(1), which provides, *inter alia*, that "[w]ithin five days after the initial communication with a consumer in connection with the

10

collection of any debt, a debt collector shall . . . send the consumer a written notice containing . . . the amount of the debt." Plaintiff claims that Schachter's November 19 letter violated this provision because its reference to a $73.39 "payment and/or credit" was confusing, causing the letter to "fail[] to clearly and effectively state the amount of the debt." (Am. Compl., Dkt. 18, ¶¶ 42, 46.) He argues that "[w]hether or not the amount Schachter alleges is due in its letter is accurate in hindsight," the letter's inclusion of different amounts for the "amount of the debt due as of charge-off," the amount of "payments and/or credits," and the "amount of the debt due" failed to clearly and effectively communicate the required information. (*Id.*; *see also* November 19, 2018 Letter, Dkt. 18-3.)

Plaintiff's claim is without merit. Schachter's letter clearly stated: "Total amount of the debt due: $6,257.68." (November 19, 2018 Letter, Dkt. 18-3.) The information required by § 1692g(a), *i.e.*, "the amount of the debt," is stated unambiguously. The additional amounts, which indicate that the debt was $6,331.07 at the time of charge-off and later reduced by a $73.39 "payment and/or credit," simply clarify how the total amount of the debt was calculated. Though Plaintiff claims that the inclusion of these amounts was "confusing," the FDCPA does not impose liability based on unreasonable misinterpretations of collection notices. *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015). As even the least sophisticated consumer is capable of "making basic, reasonable[,] and logical deductions and inferences," *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (internal quotation marks omitted), Plaintiff's claim under § 1692g(a) fails.[10]

---

[10] Plaintiff's citation to *Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017), is unavailing. (*See* Pl.'s Supp., Dkt. 30, at 5.) The debt collection letter at issue in *Carlin* indicated that the total amount of the debt due "*may* include *estimated* fees and costs." *Carlin*, 852 F.3d at 217. Because Schachter's November 19 Letter contains no such vague, Delphic language, *Carlin* is distinguishable.

## CONCLUSION

For the reasons stated, the Court grants Schachter's motion to dismiss. Schachter Portnoy, L.L.C.[11] is hereby terminated as a party to this action.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 11, 2019
  Brooklyn, New York

---

[11] The Court notes that co-Defendant Cavalry has not moved to dismiss the complaint as to it, despite allegedly having sent debt collection letters containing the same language as the Schachter letters. Accordingly, the Court is ordering Plaintiff to show cause, by October 11, 2019, why the FDCPA claims against Calvary should not also be dismissed.